BASKIN, APPELLANT, *v.* CENTRAL NATIONAL BANK OF CLEVELAND, TRUSTEE, ET AL., APPELLEES.

(No. 44697—Decided May 2, 1983.)

*Mr. Julien C. Renswick,* for appellant.
*Mr. Mark V. Webber,* for appellees.

DAY, J. Plaintiff-appellant, Norman Baskin ("Baskin" or "plaintiff"), filed suit in Cuyahoga County Court of Common Pleas to recover benefits allegedly due under the *Amended and Restated Profit-Sharing Trust Agreement* ("Plan") of his former employer, Bass Chevrolet, Inc. ("Bass" or "Company").[1] Bass had denied Baskin's request for benefits on the basis of a forfeiture clause in the Plan prohibiting Bass employees from accepting employment with a competitor. The trial court found the forfeiture provision valid under the Employee Retirement Income Security Act of 1974 ("ERISA" or "Act")[2]; found that Baskin had violated the provision; and granted Bass's motion

---

[1] The plan also covered benefits for employees of a subsidiary of Bass known as Northfield Auto Lease, Inc. The Trustee responsible for administering the funds paid into the Plan was Central National Bank of Cleveland.

[2] 88 Stat. 829 (1974) (ERISA) is distributed in parts through other statutes, see, *p.e.,* Section 1001 *et seq.,* Title 29, U.S. Code (Labor), and Section 401 *et seq.,* Title 26, U.S. Code (Internal Revenue Code).

under Civ. R. 41(B)(2) for dismissal on the ground that, upon the facts and law, Baskin demonstrated no right to relief.[3]

The judgment is affirmed.

## I

The parties stipulated that Baskin sold used cars for Bass, a retail automobile dealership, from March 8, 1971 to December 1, 1979. Within two years (in fact within several days) of voluntarily terminating his employment with Bass, Baskin started working for Bob Kay Ford, another retail automobile dealership in Cuyahoga County (approximately six miles from Bass). Baskin subsequently requested profit sharing benefits that had accrued on his behalf in the trust fund established under the Plan. On the basis of Baskin's employment with Bob Kay Ford, the Advisory Committee for the Plan[4] determined that Baskin had forfeited his right to benefits. On April 22, 1980, Central National Bank, the Plan Trustee, denied him any benefits. On July 17, 1980, he sued for breach of the Plan agreement.[5] In his appeal from an adverse judgment in the court of common pleas, Baskin assigns two errors:

### Assignment of Error No. 1

"In view of the provision of the profit sharing plan that its validity and effect shall be governed by the laws of the State of Ohio, it was error for the trial court to fail to apply the law of Ohio to determine the validity of the forfeiture clause in such profit sharing plan; for in the application of Ohio law, the trial court should have concluded that the forfeiture clause in said profit sharing plan could not be applied to plaintiff-appellant to divest him of his previously vested interest in such plan."

### Assignment of Error No. 2

"Even if federal law as set forth in the Federal Employee Retirement Security Act (ERISA) should apply to determine the validity of the forfeiture clause of the profit sharing plan, the trial court erred in holding that under such federal law plaintiff-appellant's prior interest in such profit sharing plan could be divested from him by reason of the forfeiture clause that was contained therein."

## II

Apparently, in response to employee dissatisfaction and in an effort to create incentive for employees, the owners and upper management of Bass formulated the Plan unilaterally in 1972 without any employee bargaining or input.[6] Under the arrangement, the Company contributed to the trust fund each year it showed a profit, as it did from 1972-1979. The Internal Revenue Service found an earlier version of a Bass profit-sharing agreement qualified under Internal Revenue Code (1954), Section 401 (Section 401, Title 26, U.S. Code) on April 11, 1973. An amended version, the Plan in issue here, qualified on August 30, 1978, effective December 4, 1977. In November 1978, Baskin received a summary and outline of the Plan from Bass. The Plan defined a "participant" as:

"[A]n individual who becomes eligible to participate in this Trust, for whose ac-

---

[3] See Judgment Entry of Judge James P. Kilbane in case No. 80-015231 received for filing November 13, 1981.

[4] Plan, Article 2, *The Advisory Committee,* provides for the establishment of that committee. Plan, Article 10, *Authority of Advisory Committee,* enumerates its powers.

[5] Pursuant to Clause 9.02(d) in the Plan, claims on the trust fund were to be submitted to arbitration. Baskin's claim was arbitrated and on May 28, 1981, the arbitration decision went against him. On June 10, 1981, Baskin appealed for trial *de novo* in the court of common pleas, and a bench trial was held on November 3-4, 1981.

[6] Richard Bass is president and principal stockholder of Bass. Arthur Rosen is general manager and second in command after Richard Bass. Anita Hartman is business manager and secretary-treasurer. This trio constitutes the Advisory Committee for Bass under the Plan.

count a contribution has been made, and whose interest hereunder has not been fully distributed; such term shall include persons who are participating on an active or an inactive basis."[7]

Baskin, as an employee of Bass, met this definition. According to the Plan a participant acquired "a vested right in his share of the trust fund connected with and derived from" the contributions to the fund by the Company ("adjusted as of the preceding evaluation date and excluding forfeitures with respect to the year in which the employment of * * * participant terminated * * *") pursuant to this schedule:

| "Years of Service in the Plan | Vested Interest |
|---|---|
| "Less than 1 year | 0% |
| "At least 1 year but less than 2 years | 5% |
| "At least 2 years but less than 3 years | 10% |
| "At least 3 years but less than 4 years | 15% |
| "At least 4 years but less than 5 years | 25% |
| "At least 5 years but less than 6 years | 40% |
| "At least 6 years but less than 7 years | 55% |
| "At least 7 years but less than 8 years | 70% |
| "At least 8 years but less than 9 years | 85% |
| "9 years or more | 100%"[8] |

Although Bass actually employed Baskin for eight years and nearly nine months, the Plan credited him with only seven years and ten months' service.[9] Since a full share held the value of $12,876.15 at the time Baskin's employment terminated, his claim would have been for $9,013.31, his seventy percent vested interest. However, rights described as "vested" in the Plan could be terminated under specified conditions. The condition relevant here is exemplified in the so-called "bad boy" clause:

"8.04(A) Any provisions for the vesting of the interest of any participant to the contrary notwithstanding, if the Committee finds that any participant's employment has been terminated for any of the following, the entire interest of such terminated participant shall be forfeited, * * *.

"* * *

"(e) If a participant should leave his employment for any purpose and thereupon engage in a competing business, directly or indirectly, as a proprietor, shareholder, officer, employee, or otherwise, within two (2) years from the time of such severance in the Metropolitan Chevrolet Cleveland Market Zone 28, the entire interest of such participant shall be forfeited and shall be reallocated as herein provided."[10]

At the trial, Richard Bass testified that denial of Baskin's benefits was based solely on the strength of Clause 8.04(A)(e).

Qualifications limited the "bad boy"

---

[7] Plan, Article 1, Clause 1.04.

[8] Plan, Article 8, Clause 8.01.

[9] Plan, Article 8, Clause 8.02 provides in part:

"(A) For purposes of computing 'Years of Service in the Plan', as set forth in Paragraph 8.01, the Committee shall allow and grant to each participant a credit of one-half of a month 'Years of Service in the Plan' for each one month of employment from May 1, 1964 to the original effective date of the Companies [sic]

Profit Sharing Trust, to-wit: December 1, 1972."

[10] The record indicates that Metropolitan Chevrolet Cleveland Market Zone 28 stretched to Temperance, Michigan, and prior litigation concerning the clause had resulted in a consent decree limiting its geographic scope. In *Lawrence Berk* v. *Central National Bank, Trustee* (1978), Cuyahoga C.P. No. 938650, unreported, the scope of the forfeiture clause was reduced to Cuyahoga and contiguous counties.

clause of the Plan to some extent. Rights of a participant to benefits were deemed "nonforfeitable" (1) upon termination of the agreement or discontinuance of Company contributions to the extent required by Section 401(a)(7), Title 26, U.S. Code (Internal Revenue Code), and (2) when a participant possessed a one hundred percent vested interest at the time of any violation of the forfeiture grounds of 8.04(A), including 8.04(A)(e), the "bad boy" clause.[11]

Section 1053, Title 29, U.S. Code, incorporates Section 203 of ERISA. That portion of ERISA sets up minimum vesting standards for employee benefits. In relevant part it provides:

*"Minimum vesting standards*

"(a) Each pension[12] plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in addition shall satisfy the requirements of paragraphs (1) and (2) of this subsection.

"* * *

"(2) A plan satisfies the re-

---

[11] Plan, Article 8, Clause 8.04(C).

[12] Although the language of Section 1053, Title 29, U.S. Code, specifies "pension plan," the minimum vesting standards of ERISA also apply to the Bass profit sharing plan. See Section 4(a) of ERISA incorporated at Section 1003, Title 29, U.S. Code, which provides that the Act covers "any employee benefit plan * * *" which is "established or maintained — (1) by any employer engaged in commerce or in any industry or activity affecting commerce; * * *"

The minimum vesting standards apply to an employee pension benefit plan which Section 1002(2), Title 29, U.S. Code (Section 3[2] of ERISA), defines as:

"(2) The terms 'employee pension benefit plan' and 'pension plan' mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms

quirements of this paragraph if it satisfies the requirements of subparagraph (A), (B), or (C).

"(A) A plan satisfies the requirements of this subparagraph if an employee who has at least 10 years of service has a nonforfeitable right to 100 percent of his accrued benefit derived from employer contributions."

The Bass Plan's vesting schedule fulfilled the minimum requirements of Section 1053(a)(2)(A) (Section 203 [a][2][A] of ERISA). An employee with only nine years service accrued a nonforfeitable right to one hundred percent benefits. Although the Plan refers to the employee's percentage interest in the first eight years of service as a "vested" one, the "bad boy" clause makes true vesting contingent on the conditions that the employee attain nine years service or not compete with Bass within Cuyahoga or contiguous counties for two years following termination. Thus, "vested" as used in the Plan must be differentiated somewhat from "nonforfeitable" as used in ERISA.[13] ERISA's description of mini-

or as a result of surrounding circumstances such plan, fund, or program—

"(A) provides retirement income to employees, or

"(B) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan."

The Bass Plan comes within Section 1002(2)(b). See Plan, Article 5, *Accounts*; Plan, Article 7, *Benefits*.

[13] The portion of the Act now incorporated at Section 1002(19), Title 29, U.S. Code (Section 3[19] of ERISA), states: " 'nonforfeitable' when used with respect to a pension benefit or right means a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan."

mum vesting translates into minimum nonforfeitable benefits, but a so-called "vested interest" under the Plan remains subject to either attainment of nine years' service or compliance with the "bad boy" clause.

## III

There are two issues posed by the assignments of error:

(1) Whether Baskin's rights under the Plan are determined by Ohio law or federal law.[14] (Assignment of Error No. 1), and, if federal law does apply;

(2) Whether federal law (ERISA) requires that the accrued vested percentage of Baskin's benefits be nonforfeitable despite the apparent applicability of the "bad boy" clause (Assignment of Error No. 2).

Section 514(a) of ERISA, Section 1144, Title 29, U.S. Code, expressly preempts state law. ERISA became effective on January 1, 1975, Section 1144(a), Title 29, U.S. Code, with certain provisions, including those concerning forfeiture, not effective until January 1, 1976, Section 1061(b)(2). A plan operative after those dates must respond to ERISA standards.

Baskin's claim, although not specifically grounded on ERISA, arose when his request for benefits was refused on April 22, 1980 — after the effective dates of the relevant sections of the Act. Thus, his rights are controlled by federal interpretations of ERISA.

The "bad boy" question was considered in *Hepple* v. *Roberts & Dybdahl, Inc.* (C.A. 8, 1980), 622 F. 2d 962. The *Hepple* court scrutinized the legislative requisites and administrative regulations promulgated pursuant to the Act while searching for a proscription of "bad boy" clauses. The *Hepple* court concluded:

"Within the limits of the minimum vesting requirements of § 1053(a), employers are given the choice of determining the scope of employees' rights to benefits. * * * There is no statutory basis upon which to hold that these rights in excess of the requirements of § 1053(a) must be nonforfeitable." *Id.* at 966.

Particularly persuasive to the court was Federal Tax Regulation Section 1.411(a)-4(a), which provides in part:

"To the extent that rights are not required to be nonforfeitable to satisfy the minimum vesting standards [of Section 411(a), Title 26, U.S. Code, incorporating Section 1012 of ERISA, which are the same as Section 1053(a), Title 29, U.S. Code], or the nondiscrimination requirements of Section 401(a)(4), they may be forfeited without regard to limitations on forfeitability required by this section."

Also persuasive was an example in Federal Tax Regulation Section 1.411(a)-4(c):

"Example (1). Corporation A's plan provides that an employee is fully vested in his employer-derived accrued benefit after completion of 5 years of service. The plan also provides that, if an employee works for a competitor he forfeits his rights in the plan. Such provision could result in the forfeiture of an employee's rights which are required to be nonforfeitable under section 411 and therefore the plan would not satisfy the requirements of section 411. If the plan limited the forfeiture to employees who completed less than 10 years of service, the plan would not fail to satisfy the requirements of section 411 because the forfeitures under this provision are limited to rights which are in excess of the minimum required to be nonforfeitable under Section 411(a)(2)(A)."

Baskins's right to recover any of the

---

[14] Plan, Article 13, Clause 13.05 provides: "The validity and effect of this trust shall be governed by the laws of the State of Ohio. In case any provisions of this trust shall be invalid, such fact shall not affect the validity of any other provision."

benefits he had accrued in seven years, seven months credited service was vested subject to divestment. His rights were "in excess" of the nonforfeitable minimum vested rights required under both Section 411(a)(2)(A), Title 26, U.S. Code, and Section 1053(a)(2)(A), Title 29, U.S. Code.[15] To the extent that the Plan's "bad boy" forfeiture provision eliminated his rights described as "vested" in the Plan without violating the minimum nonforfeitable vesting standards of the Act, the "bad boy" clause is valid.

Neither Assignment of Error No. 1 nor Assignment of Error No. 2 is well-taken.

The judgment is affirmed.

*Judgment affirmed.*

PRYATEL, C.J., and PATTON, J., concur.

---

[15] Excess rights are meant to describe rights beyond those required by the minimum vesting standards of the Act.